### COMMONWEALTH *vs.* JAMES F. PIERCE.

Norfolk.     April 2, 1888. — May 10, 1888.

Present: MORTON, C. J., DEVENS, W. ALLEN, C. ALLEN, & HOLMES, JJ.

*Intoxicating Liquors — Common Nuisance — Retail Druggist — Purchaser — Certificate.*

A retail druggist, not licensed to sell intoxicating liquors, who sells in his shop pure alcohol for medicinal, mechanical, or chemical purposes, without the certificate of the purchaser stating for what it is to be used, as required by the St. of 1887, c. 431, § 2, is liable for maintaining a common nuisance under the Pub. Sts. c. 101, § 6.

COMPLAINT alleging that the defendant kept and maintained a common nuisance, to wit, a tenement in Quincy, used for the illegal sale and illegal keeping of intoxicating liquors on May 1, 1887, and on divers other days and times between that day and August 20, 1887. Trial in the Superior Court, before *Pitman,* J., who allowed a bill of exceptions, in substance as follows.

The defendant was, during the time alleged, a retail druggist, and kept a drug store in Quincy, and had no license as such druggist or otherwise to sell intoxicating liquors. Evidence was admitted, against the defendant's objection, which tended to show that, between June 16, 1887, and August 20, 1887, sales of pure alcohol for medicinal, mechanical, and chemical purposes were made on the premises, without certificates being made by the purchasers stating the use for which the alcohol was wanted. The government offered no evidence of sales on the premises of other intoxicating liquors than alcohol during this time.

The defendant requested the judge to rule: 1. Upon the evidence, the defendant cannot be convicted of keeping a common nuisance, as charged in the complaint. 2. The defendant was not required to have a certificate of the purchaser in order to sell alcohol for medicinal, mechanical, or chemical purposes, nor to keep a book, nor to conform to the requirements of the St. of 1887, c. 431, §§ 2–4. The judge declined so to rule, but instructed the jury, that, if they were satisfied that the defendant, for any substantial period of time between June 16, 1887, and August 20, 1887, maintained the premises for the unlawful sale of in-

toxicating liquors, he was guilty; and that sales of pure alcohol for medicinal, mechanical, or chemical purposes, without the certificate described in the St. of 1887, c. 431, § 2, would be illegal, and evidence upon which the jury would be justified in convicting the defendant of the offence charged.

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*E. C. Bumpus,* for the defendant.

*A. J. Waterman,* Attorney General, for the Commonwealth.

W. ALLEN, J.   The only question presented is whether a retail druggist, not licensed to sell intoxicating liquors, who sells in his shop pure alcohol for medicinal, mechanical, or chemical purposes, without a certificate of the purchaser stating the use for which the same is wanted, is liable for maintaining a common nuisance under the Pub. Sts. c. 101, § 6.   The answer depends upon the construction of the St. of 1887, c. 431, entitled, " An Act to limit and regulate the sale of intoxicating liquors by retail druggists and apothecaries," and approved June 16, 1887.

Before the act of 1887, retail druggists were authorized to sell pure alcohol for medicinal, mechanical, and chemical purposes, and they could also be licensed, under the fourth class of licenses, " to sell liquors of any kind, not to be drunk on the premises," and under the sixth class, including " licenses to druggists and apothecaries to sell liquors of any kind for medicinal, mechanical, and chemical purposes only, and to such persons only as may certify in writing for what use they want it."   St. 1875, c. 99, §§ 2, 7, and St. 1878, c. 203, compiled in the Pub. Sts. c. 100, §§ 2, 10.   It was in the discretion of the municipal authorities to grant licenses of the sixth class without a vote of their city or town, and persons licensed under that class were required to keep a record of sales made by them.   Pub. Sts. c. 100, §§ 3, 5.

The St. of 1887, c. 431, besides requiring municipal authorities to issue licenses of the sixth class, and making particular provisions concerning the records of sales made, contained the following provisions, material to the question under consideration: " § 1. No license, except of the sixth class, . . . shall be hereafter granted to retail druggists or apothecaries for the sale of spirituous or intoxicating liquor. . . . § 2. Sales of intoxicating liquor of any kind by retail druggists and apothecaries, for medi-

cinal, mechanical, or chemical purposes, shall be made only upon the certificate of the purchaser, which certificate shall state the use for which the same is wanted, and shall be immediately cancelled at the time of such sale in such manner as to show the date of cancellation."

The authority to sell pure alcohol without a license, and to sell any kind of intoxicating liquors under a license of the sixth class, was not affected by the statute unless by the second section. Without that section retail druggists could, without a license, sell to any person pure alcohol for the purposes mentioned, and could be licensed to sell any kind of intoxicating liquors for the purposes mentioned but to such persons only as certified in writing for what use they wanted it. We cannot construe the second section as limited to the latter class, and as intended to change the old law only by providing that the certificate required by it should be cancelled. The language includes both classes, and we think that the intention of the Legislature was to put authorized sales of alcohol without a license on the same footing in respect to a certificate of the purchaser as sales of liquors authorized by a license, and to prohibit all sales of intoxicating liquors by retail druggists and apothecaries except upon a certificate of the purchaser.

It is argued that §§ 3 and 4 will not be held to include sales of alcohol without a license, because there would be no need of inserting in the record of such sales the kind of liquor sold. These sections re-enact, with changes, the law relating to licenses of the sixth class, (Pub. Sts. c. 100, § 3,) and revive with changes the law applicable to sales of alcohol without a license, as it existed until it was repealed by the law authorizing licenses of the fourth class to druggists, which was itself repealed by the St. of 1887, c. 431. Gen. Sts. c. 86, § 26. St. 1869, c. 415, § 28. St. 1875, c. 99. If the record was intended to include sales of both classes, it would naturally include all the particulars required of sales under either class.

It is further argued, that the provisions in § 5, that any one convicted shall be liable to certain penalties, " and his license shall thereby be rendered void," shows that only licensed persons were intended. If the requirements of the statute apply alike to licensed and unlicensed persons, the fact of a license is immaterial to a conviction, and the forfeiture of the license as a consequence

of a conviction, not as a part of the sentence, would properly be expressed as following all convictions, without distinguishing whether of licensed or unlicensed persons, as a statute providing for the forfeiture of all personal property of persons convicted of felony would not be likely to be limited in terms to convicts who possessed property which could be forfeited. The Pub. Sts. c. 100, § 1, make illegal all sales of intoxicating liquor not authorized by the statute; § 2 authorizes sales of alcohol by druggists for certain purposes; the St. of 1887, c. 431, provides in § 2 that the sale so authorized "shall be made only upon the certificate of the purchaser."

We must construe this as restricting the authority before given, and so rendering sales by retail druggists of pure alcohol for medicinal, mechanical, or chemical purposes, without the certificate of the purchaser, illegal sales, within the meaning of the Pub. Sts. c. 101, § 6.        *Exceptions overruled.*